# Titus *versus* Wilmarth.

A person may acquire the rights of a settler, provided all the requisites of residence and improvement are complied with even though he enters under a mistaken belief that the land is covered by his warrant, which, in fact, only covers an adjoining tract.

ERROR to the Court of Common Pleas of *Susquehanna County.*

Ejectment by the plaintiff below, Lewis P. Wilmarth, against Crawford Titus, for thirty-five acres and one hundred and twenty perches of land, surveyed to Wilmarth by virtue of a warrant, dated 6th of December, 1853. The action was brought as an appeal from the decision of the Board of Property, in admitting a survey of Crawford Titus, the defendant.

The plaintiff claimed a settlement from 1814, and proved an actual residence of his father, from whom the property descended to him, from that period continuously. He proved by Charles

Tingley the establishment of the lines by which he claimed his boundary from near that time. He had a house and barn upon the lot, and had raised grain, and occupied it as a means of supporting his family. A large part of his farm was on a lot called the Baldwin survey, which adjoined the land on which he resided, and which is now in dispute. A few years since it was ascertained that the Baldwin warrant did not cover this piece of vacant land; and Crawford Titus, living in the vicinity and learning this fact, conceived the design of getting the land and a house which was erected thereon, which happened to be for the time unoccupied, and which belonged to Mr. Wilmarth.

Accordingly on the 27th of October, 1853, he made an application for the land, stating that he had an improvement upon the land of one acre, and dating his improvement in 1849. Upon the trial it was proved and not controverted, that he had never improved upon the lot, but that the house covered by his survey and the improvements had all been made by Wilmarth.

As soon as the attempt of Titus to get the land was known to Wilmarth he applied for a warrant for the land and entered the caveat against the survey of Titus.

The evidence in the case establishes the following facts:—

1. That Wilmarth entered upon the land in 1814, for the purpose of residence and settlement, and raised grain and made it the means of supporting his family, and has continued to reside there to the present time.

2. That around this land he has, from about 1814, had well defined lines, and that his claim has always extended to those lines.

3. That the residence, occupation, and claim were notorious, and that Titus lived in the immediate vicinity and must have known of the claim.

4. That in addition to the house in which Wilmarth resided there was upon the premises another house, on the northwest side of the road, at the date of survey unoccupied, and around it about four acres improved. This had been built by a brother of plaintiff, who on the 21st of November, 1853, conveyed it to the plaintiff.

It was admitted that when Wilmarth entered, he supposed it to be surveyed land, and that it was covered by the Baldwin warrant.

On the 21st of November, 1853, Wilmarth made an application for the land, and on the 6th of December, 1853, a warrant issued, and it was surveyed on the 13th of the same month.

This survey included the land which had always been claimed by Wilmarth. The survey for Titus excluded about five acres

[Titus *v.* Wilmarth.]

on which the house and orchard and barn of Wilmarth were erected, and leaves that in a triangular piece.

Defendant requested the court to charge the jury as follows:—

1. That if the jury believe, from the evidence in the case, that the plaintiff went on to the land in controversy, under a claim of title from Blackman under the Baldwin warrant, and made his improvement under said claim, that then he gained no rights as a settler to said land.

2. That unless the plaintiff went on to said land as land belonging to the State, and with the *bona fide* intention of making a settlement thereon, and make his improvements in pursuance of said intention, and claimed to defined limits, that he acquired no rights to said land against a subsequent warrantee, and cannot recover.

3. That if the plaintiff went into possession of the land under the Blackman deed, and under the Baldwin warrant, and by mistake made improvements, and built his buildings over the line, he got thereby no rights as a settler, and certainly not beyond his actual improvements.

The court, WILMOT, J., charged as follows:—

The plaintiff in this case claims in virtue of an actual resident settlement upon the land in dispute, and made applications therefor on the 21st of November, 1853, claiming an improvement as early as 1814. On this application, a warrant was issued to plaintiff, dated the 6th of December, 1853, on which a survey was made on the 13th of the same month.

The defendant made application for the land, claiming an improvement of one acre, made in 1849. A warrant issued to him, dated the 2d of November, 1853, on which a survey was made the 17th of the same month.

On the 25th of November, 1853, the plaintiff entered a *caveat*, which was heard by the Board of Property, and dismissed on the 9th of March, 1855. On the 4th of August, 1855, the plaintiff institutes this suit.

The paper title of the defendant is prior in date to that of the plaintiff, but in our view this cause rests upon the facts touching the improvement and actual settlement upon the land. Has the plaintiff, or those under whom he claims, kept up an actual *bona fide* resident settlement upon the land in dispute, making improvements, cultivating the land, and raising crops thereon—making it a place of permanent abode, and the means of supporting a family—and this prior to the inception of the defendant's title? If so, the plaintiff would be entitled to recover, unless you find that the land became abandoned, and thus open to entry.

It seems that when Thomas Wilmarth purchased of Blackman he supposed the land in dispute was covered by a warrant

known as the Baldwin warrant, and it is claimed that, therefore, he acquired no right as a settler under the pre-emption laws of the commonwealth. If the evidence of Charles Tingley is believed, Thomas Wilmarth, under whom the plaintiff claims, resided upon and improved the land forty years ago. He purchased of Blackman in 1825, and at that time supposed the land was covered by the Baldwin warrant. In this he was mistaken, and actually built his house upon vacant land of the commonwealth, improving and cultivating several acres. The court do not think that this mistake as to the real situation of the land would preclude his acquiring the rights of a settler, provided all the requisites of residence and improvement are complied with; and the court decline to charge as requested in the within points submitted by defendant's counsel. You must believe, in order to entitle the plaintiff to recover, that not only an actual resident settlement was kept up on the land— that there was no abandonment, but that the claim was defined by known boundaries. A settler cannot make an indefinite claim, reaching out in any direction that may ultimately suit his interest and convenience, but must define its extent by known boundaries and limits.

The evidence of an abandonment in this case is very slight indeed, and if there was no abandonment, and the jury believe the evidence of the plaintiff touching the early and continued residence and settlement upon the land, with claim to known boundaries embracing the land in question, in the opinion of the court the plaintiff would be entitled to recover.

The jury found for the plaintiff.

The charge of the court is the error assigned.

*Bentley* and *Fitch*, for plaintiff in error, cited *Bank* v. *Woods*, 1 J. 118; *Henry* v. *Henry*, 5 Barr, 249; 16 S. & R. 193; *McMurtrie* v. *McCormick*, 3 P. R. 434.

*Wm. & Wm. H. Jessup*, for defendant in error.

The opinion of the court was delivered March 18th, 1858, by
THOMPSON, J.—The plaintiff below and his father, from whom the land in controversy descended, had been in the actual occupancy of it by residence and cultivation for about thirty-five years prior to the alleged inception of title in the defendant below. There was no evidence on the subject of the residence of the defendant at any time on it. On the 27th October, 1853, he applied for the land as a settler, and claimed an improvement of one acre, made in 1849. The application was for thirty acres, excluding the plaintiff's house and about five acres of his improvements, and including a vacant house and

[Titus *v.* Wilmarth.]

three or four acres belonging to him. The father of the plaintiff had gone on the land in 1814, under the belief that it was covered by the Baldwin warrant, which he owned, and built a house, cleared, fenced, and raised grain on the land. The boundaries never were marked and defined. In process of time it turned out that it was vacant land, not covered by, but adjoining the Baldwin warrant, on which Wilmarth, Sen., was also improving and cultivating. Titus, discovering this, applied for a warrant for the same land, fixing the commencement of his improvement as already stated; the plaintiff continuing his occupancy and cultivation as usual. A warrant issued on Titus' application on the 2d day of November, 1853, on which an official survey was made of 30 acres and 117 perches, on the 17th day of the same month. On the 6th day of December, Wilmarth took out a warrant on an application filed the 21st day of November, dating his improvement in 1814, and procured a survey and return to be made on it of 35 acres and 136 perches. On the 13th day of December, having previously filed a *caveat* against the acceptance of the return of survey and granting a patent to Titus. On hearing, the Board of Property dismissed the *caveat*, deciding in favor of the warrant and survey of Titus. This case was then brought, under the act of assembly, and is in effect an appeal from the decision of the Board of Property.

The only question raised by the defendant below was as to the original settlement of plaintiff's ancestor. That if he entered on the land under a mistaken belief that it was covered by his warrant, he could not hold it as a settler, although he had complied with all the requirements of the law. The learned judge ruled that "this would not preclude his acquiring the rights of a settler, provided all the requisites of residence and improvement were complied with."

It might be a promising, as well as a new source of speculation in favor of persons not troubled with scruples about the means of acquiring property, to have it established that a mistake like this would vitiate and destroy the effect of forty years of settled and deliberate purpose to appropriate lands by acts sufficiently indicative to give title by law. But all such are destined to be disappointed in hopes of this nature. The settler probably mistook the true state of facts in regard to this land, and thought he had it by purchase. How long the mistake continued is not known, nor is it material. He fulfilled all the requirements to entitle him to it by settlement. His mistake, resulting in wrong to no one, would not defeat his acts. His works were meritorious, if his faith was not. The land was subject to appropriation on condition of settlement. He performed the condition, and became thereby as fully entitled to its legitimate fruits as would another if he had

[Crossman et al. *v.* Hilltown Turnpike Company.]

done the same thing. The commonwealth, in such a case, deals with the acts of entry and appropriation, and not with mistakes or thoughts confined to a man's own bosom. It matters not to her, so that the prescribed acts and conditions are performed, whether there were mistakes superinducing the undertaking or not. The pre-emption right follows the actual performance. Wilmarth had made the land his place of abode and manifested his determination of making it the means of supporting a family, by building a house and residing on it, and cultivating and raising grain on it. And thus it continued up to the time when the defendant procured his warrant. This gave a pre-emption right to the land, and entitled him to the warrant and survey and a recovery under them.

*Milford* v. *Thompson,* 7 W. 442, sustains the ruling of the court in a clearly analogous case. Possession was taken after survey of part of an adjoining donation tract under an honest though a mistaken belief that the land was embraced by the defendant's lot. Possession was continued for twenty-one years without any evidence that the mistake had been discovered, and it was held that the defendant had title by the statute of limitations. KENNEDY, J., remarking that, "as to this (the mistake), it cannot alter or change the nature or character of his possession more than it can the fact of his having it."

There is no error in the record, and the judgment is affirmed.